UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON

| | |
|---|---|
| **ELIZABETH LANKFORD,** | **CIVIL ACTION NO. 14-194-KKC** |
| Plaintiff, | |
| V. | **OPINION AND ORDER** |
| **CAROLYN W. COLVIN, Acting Commissioner of Social Security,** | |
| Defendant. | |

\*\*\* \*\*\* \*\*\*

This matter is before the Court for consideration of cross-motions for summary judgment. [DE 15; 16.] The Claimant, Elizabeth Lankford, brought this action to obtain judicial relief from an administrative decision of the Commissioner of Social Security denying her claim for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income. The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence and was decided by the proper legal standards.

## I. OVERVIEW OF THE PROCESS

In determining whether a claimant has a compensable disability under the Social Security Act, the regulations provide a five-step sequential process which the administrative law judge ("ALJ") must follow. 20 C.F.R. § 404.1520(a)(4); *see also Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 652 (6th Cir. 2009) (describing the administrative process). The five steps, in summary, are as follows:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

> 2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers*, 582 F.3d at 652 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 404.1520(b)–(g)).

The claimant bears the burden of proof through the first four steps of the analysis; but if the ALJ reaches the fifth step without finding the claimant disabled, then the burden shifts to the Commissioner. *Longworth v. Comm'r Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005). The Commissioner satisfies the burden of proof at the fifth step by finding that the claimant is qualified for—and capable of performing—jobs that are available in the national economy and may rely upon the testimony of a vocational expert ("VE") regarding the range of potential jobs. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423, 425 (6th Cir. 2008).

## II. PROCEDURAL BACKGROUND AND THE ADMINISTRATIVE DECISION

Elizabeth Lankford ("Claimant") filed her claim for DIB on August 28, 2012, alleging an onset date of May 13, 2012. [TR 10]. The agency denied her application initially and upon reconsideration. [TR 10]. Claimant requested review by an ALJ, and a hearing was held on February 11, 2014. [TR 25–62]. The ALJ subsequently issued an unfavorable decision on March 14, 2014. [TR 10–19].

At the time the ALJ's decision was rendered, Claimant was 35 years old. [TR 12]. Claimant holds a Certified Nurse Aid (CNA) license and has past relevant work as a CNA,

cook, store laborer, and cashier. [TR 29, 40-43]. She alleges disability due to degenerative disc disease, coronary artery disease, status-post myocardial infraction, angina, hypertension, post obstructive sleep apnea, and obesity [DE 51-1 at 2]. The claimant suffered a heart attack in May 2012 [TR 43], testified before the ALJ that she suffers acute pain in her lower back [TR 50], and also struggles with depression and anxiety. [TR 52.] Claimant's insured status expires on December 31, 2017. [TR 12].

First, the ALJ determined that Claimant has not engaged in substantial gainful activity since her alleged onset date of May 13, 2012. [TR 12]. Second, the ALJ found that Claimant suffers from the following severe impairments: degenerative disc disease, coronary artery disease, status-post myocardial infraction, angina, hypertension, and obesity. [TR 12]. Third, the ALJ determined that Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. [TR 16].

Next, the ALJ reviewed the record to determine Claimant's residual functional capacity ("RFC"). RFC assesses a claimant's maximum remaining capacity to perform work-related activities despite the physical and mental limitations caused by the claimant's disability. 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). In finding Claimant's RFC, the ALJ considered all symptoms in light of the objective medical evidence and other relevant evidence, including the following: (i) daily activities; (ii) location, duration, frequency, and intensity of symptoms; (iii) precipitating and aggravating factors; (iv) type, dosage, effectiveness, and side effects of any medication; (v) additional treatment; (vi) additional measures used to relieve symptoms; and (vii) other factors concerning functional limitations and restrictions due to symptoms. 20 C.F.R. § 404.1529. After reviewing all of the evidence, the ALJ determined that Claimant has the RFC to perform sedentary work, so long as she does not

3

climb ropes, ladders, or scaffolds, performs no more than occasional climbing of ramps or stairs, and avoids concentrated exposure to extreme temperatures. [TR 16].

After establishing Claimant's RFC, the ALJ continued to the fourth step. The ALJ asked the VE whether a hypothetical individual with Claimant's vocational factors and RFC could work as a cashier, nurse aid, cook, or store laborer. [TR 59]. The VE testified that this hypothetical individual could not perform any past relevant work. [TR 59]. Thus, the ALJ moved to the fifth step. The ALJ asked if this hypothetical individual could make an adjustment to other work and the VE noted that this hypothetical individual could perform a number of sedentary jobs, including information clerk, office clerk, and assembler. [TR 59-60]. Therefore, the ALJ found Claimant not disabled. [TR 18–19].

The ALJ's decision that Claimant is not disabled became the final decision of the Commissioner when the Appeals Commission subsequently denied Claimant's request for review on August 2, 2014. [TR 1-3]. Claimant has exhausted her administrative remedies and filed a timely action in this Court. This case is now ripe for review under 42 U.S.C. § 405(g).

### III. GENERAL STANDARD OF REVIEW

The decision of the Commissioner must be affirmed unless the ALJ applied the incorrect legal standards or the ALJ's findings are not supported by substantial evidence. *Lindsley v. Comm. of Soc. Sec.*, 560 F.3d 601, 604 (6th Cir. 2009). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In reviewing the decision of the Commissioner, courts should not conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See Lindsley*, 560 F.3d at 604–05. Courts must look at the record as a whole, and "[t]he court 'may not focus and base [its] decision

entirely on a single piece of evidence, and disregard other pertinent evidence.'" *Sias v. Sec. of H.H.S.*, 861 F.2d 475, 479 n.1 (6th Cir. 1988) (alteration in original) (quoting *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978)). Rather, courts must affirm the Commissioner's decision so long as it is supported by substantial evidence, even if the court may have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999).

## IV. ANALYSIS

On appeal, Claimant presents two main issues for review. First, Claimant argues that the ALJ erred in determining her RFC because the ALJ failed to include her standing and walking restrictions, and because the ALJ failed to address her psychological problems. [DE 15-1 at 7-8.] Second, she asserts that the ALJ "improperly rejected the credibility of the claimant with regard to the extent of her psychological and physical conditions." [DE 15-1 at 8-9.] Neither of these arguments are persuasive.

1. The ALJ did not err in determining Claimant's RFC

Claimant asserts that the ALJ's findings regarding her RFC are inaccurate. First, she argues that the ALJ failed to fully include the restrictions stated by Dr. Allen Dawson, M.D., specifically the restriction that Claimant could perform "no standing or walking over 2 hours per day." [DE 15-1 at 8.][1]

This first argument is meritless because the ALJ specifically included the limitation on Claimant's ability to stand and walk in her analysis, and because the definition of sedentary work incorporates a two hour limit on standing and walking. In her decision, the ALJ stated:

---

[1] Dr. Dawson, a state agency physician, reviewed Claimant's records and completed a Physical Residual Functional Capacity Assessment. [TR 93-95; 106-108.]

> Even though Dr. Dawson omitted the claimant's lumbar pain and radiculopathy as a severe impairment, his reduction to sedentary exertion, with no lifting over 10 pounds and *no standing or walking over two hours per day*, amply covers any necessary limitation pertaining to Ms. Lankford's back condition, which still allows normal strength, sensation, and reflexes in her extremities.

[TR at 17-18.] (emphasis added). This clearly indicates that the ALJ considered the limit on Claimant's ability to stand and walk. The ALJ also limited her hypothetical questions to the VE to include the ability to stand two hours in an eight hour day. [TR 59.]

Furthermore, the definition of sedentary work incorporates a two hour limit on standing and walking. Social Security Ruling (SSR) 96-9p, 1996 WL 374185, at *3 (July 2, 1996) ("Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. "Occasionally" means occurring from very little up to one- third of the time, and would generally total no more than about 2 hours of an 8-hour workday."). The RFC limited Claimant to sedentary work. [TR 16.] That restriction implicitly captured the two hour limit on standing and walking. Therefore, the RFC accounts for Claimant's standing and walking limitations.

Second, Claimant argues that the ALJ "failed to address" her psychological problems. During the hearing before the ALJ, Claimant asserted that she suffers from depression and anxiety that can be debilitating when she encounters large groups of people. [TR 31; 52-53; 57.] Specifically, Claimant points to her Global Assessment of Function (GAF) scores of 50 and 60, which were assigned by counselors at Cumberland River Comprehensive Care [TR 738-759; 1076-1087], as well as the "moderate restrictions" stated by Dr. William Rigby,

6

Ph.D., as evidence of "serious social and occupational concerns" that the ALJ should have included in the RFC. [DE 15-1 at 7-8.][2]

Contrary to Claimant's assertion, the ALJ did not fail to address her asserted psychological conditions, but explicitly considered them. The ALJ concluded that "the claimant's medically determinable mental impairments do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore non-severe." [TR 14.] Thus, claimant's assertion that the ALJ "failed to address" her psychological impairments is completely baseless.

The ALJ's conclusion that Claimant's mental impairments were not severe was a valid finding. The ALJ properly considered the four "paragraph B" criteria: (1) activities of daily living, (2) social functioning, (3) concentration, persistence or pace, and (4) episodes of decompensation. [TR 14-15.] As to the first three functional areas, the ALJ found that Claimant had no more than mild limitation based on Claimant's own statements during her testimony, including Claimant's admitted ability to carry out daily household activities, her role as a mother, and her ability to appropriately deal with authority figures, among other evidence. [TR 14.] In addition, the ALJ noted that Claimant has experienced no episodes of decompensation which have been of long duration. [TR 15.] Furthermore, the ALJ observed that Claimant was able to function with only "conservative" treatment for her mental impairments, which "belies the notion of significant dysfunction." [TR 15.] The ALJ noted that Claimant's treatment was limited to monthly outpatient counseling sessions and psychotropic medication, and that she has not required psychiatric hospitalization. [TR 14-15.] This indicates that the ALJ followed the proper process of analysis for evaluating Claimant's psychological impairments and reached a reasonable conclusion.

---

[2] Dr. Rigby completed a consultative examination of Claimant at the request of the Commissioner. [TR 721-725.]

The ALJ also properly considered and discounted the evidence on which Claimant now relies. The ALJ gave the GAF ratings of 50 and 60, which were assigned by Lankford's counselors, little weight because they were inconsistent with the "vast majority" of other medical evidence in the record and Lankford's own statements about her day to day activities. [TR 15] ("[The GAF ratings] run wholly incongruent with the underlying clinical observations from both medical sources … Balanced against the claimant's sustained functioning as a mother, her treatment history and the vast majority of the respective reports from Dr. Rugby [sic] and CRCC, any reference to more than mild functional limitation merits no weight."). For instance, Dr. Angeles Alvarez-Mullin, M.D., a state agency psychologist, reviewed Plaintiff's records and opined that her mental impairments caused no more than mild limitations. [TR 91-92; 104-105.] It was acceptable for the ALJ to discount the counselors' GAF scores of 50 and 60 for this reason. SSR 06-03P, 2006 WL 2329939 (Aug. 9, 2006) ("For opinions from sources such as teachers, counselors, and social workers who are not medical sources … it would be appropriate to consider such factors as … whether the opinion is consistent with other evidence …").

It was also proper for the ALJ to afford little weight to Dr. Rigby's finding of "moderate" restrictions on Claimant's abilities. Most notably, this finding was inconsistent with the GAF score of 65 that Dr. Rigby assigned to Claimant in the very same report, which indicates only mild limitations. [TR 724.] An ALJ must consider the consistency of an opinion. 20 C.F.R. §§404.1527(c)(4); 416.927(c)(4). Furthermore, like the GAF scores of 50 and 60, the ALJ noted that Dr. Rigby's report ran contrary to the other medical evidence in the record. [TR 15.] Given the internal inconsistency in Dr. Rigby's report, as well as the fact that his report was inconsistent with other medical evidence in the record, it was acceptable for the ALJ to discount his finding of moderate impairment.

In sum, the ALJ stated a valid reason for according little weight to the GAF scores of 50 and 60, and to Dr. Rigby's finding of moderate impairment. Therefore, the ALJ did not err when she found that Claimant's mental impairments were not severe and excluded them from the RFC.

2. The ALJ did not err in discounting Claimant's credibility regarding the extent of her conditions

Next, Claimant argues that the ALJ improperly discounted the credibility of her subjective complaints. [DE15-1 at 8-9.] Claimant complained of constant pain in her back which she described as feeling like she had been "hit with a sledge hammer." [TR 50.] She placed her level of pain at a nine on a ten point scale. [TR 50.] She further reported shortness of breath, fatigue, and physical limitation, including that she was unable to stand for more than 10 minutes at a time. [TR 17.]

There is an established two-step procedure for assessing the credibility of a claimant's statements. First, the ALJ must determine whether a claimant has impairments that could reasonably cause the alleged symptoms. 20 C.F.R. § 404.1529(c); SSR 96-7p, 1996 WL 374186, at *2. Once the ALJ identifies such impairments, the ALJ must evaluate the record to determine what limitations the impairments actually cause, by considering whether the claimant's complaints are supported by the record as a whole. 20 C.F.R. §404.1529(c); SSR 96-7p, 1996 WL 374186, at *2. The ALJ followed this mandated procedure. [TR 16.]

At the first step of the analysis, the ALJ found that Claimant had impairments that could reasonably cause the symptoms she complained of. [TR 17] ("After careful consideration of the evidence, I find that claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms …"). However, at the second step, the ALJ found that "the claimant's statements concerning the intensity, persistence

9

and limiting effects of these symptoms are not entirely credible." [TR 17.] The ALJ found that Claimant's complaints lacked credibility because "[t]he available medical data reflects current physical impairment beneath the level of severity asserted by the claimant" [TR 16.] This was a valid reason for discounting the claimant's credibility. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence.").

The ALJ explained that there was no objective medical evidence or reasoned treating-source medical opinion that justified the level of pain and other symptoms asserted by Claimant. [TR 17.] As to Claimant's complaints of severe back pain, the ALJ noted Dr. Kirshnaswamy's treatment notes recorded "normal" muscle tone and strength, "intact" sensation and reflexes, and negative straight-leg raising sign during multiple exams. [TR 1127-1128.] The ALJ stated that when "[c]oupled with earlier reports of a 'normal' nerve conduction study and the claimant's earlier denial of weakness, stiffness, or pain in January 2013, just eight months from her asserted onset of disability, the totality of medical evidence casts substantial doubt upon the presence of a debilitating back condition." [TR 17.]

Similarly, the ALJ observed that other medical exam results undermined Claimant's assertions of extreme fatigue and physical limitation. The ALJ noted that despite Claimant's heightened complaints, "her clinical exam results and corresponding course of treatment has remained largely unchanged." [TR 16.] The ALJ cited multiple medical reports that indicated regular heart rate and rhythm and no murmurs. [TR 16-17.] Dr. Demaa's exam in November 2012 also revealed "clear" lungs and only "trace" edema in the lower extremities. [TR 708-709; 717-718.] Likewise, Dr. Bollavaram "also itemized the

claimant's regular heart rate and rhythm, 'good' bilateral air entry, and only 'mild' extremity edema." [TR 17; 952-954.] Just weeks before her hearing with the ALJ, doctors found Claimant free of chest pain and edema and under "optimal" medical management with continuation of her present medications. [TR 1102-1103.] Thus, the ALJ reasonably found that the absence of corroborating medical evidence undermined Plaintiff's complaints of pain, fatigue, and other symptoms.

In addition to the lack of supporting medical evidence, the ALJ also pointed out that the notes from Dr. Demaa's exam state that Claimant "is trying to get her disability and needs a checkup." [TR 16, 708.] The ALJ stated that "the possible intent of 'trying to get disability' or 'disability papers,' when making her subjective presentation during physical exams or her hearing, further dampen the credibility of her allegations." [TR 17.] The possibility that Claimant might have been exaggerating her symptoms in an attempt to qualify for benefits further supports the ALJ's credibility determination.

Lastly, Claimant also makes the generalized argument that the ALJ's decision was not supported by substantial evidence. [DE 15-1 at 10-11.] ("It is the contention of the Plaintiff under these standards of review that there is not substantial evidence to support the denial of her application for social security benefits. The objective medical evidence documents that Plaintiff has several severe conditions which are disabling."). As previously noted, the ALJ did indeed find that Claimant had several severe impairments. [TR 12.] However, the ALJ ultimately determined that Claimant was not disabled at step five of her analysis because other sedentary jobs existed that Claimant could perform. [TR 18-19.] The VE's testimony during the claimant's hearing is clearly substantial evidence that supports the ALJ's determination at step five. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423, 425 (6th Cir. 2008).

## V. CONCLUSION

For the reasons set forth above, the Court hereby **ORDERS** as follows:

1. Plaintiff's motion for summary judgment [DE 15] is **DENIED**;

2. The Commissioner's motion for summary judgment [DE 16] is **GRANTED**;

3. The decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g) as it was supported by substantial evidence and was decided by proper legal standards; and

4. A judgment consistent with this Opinion & Order will be entered contemporaneously.

Dated March 17, 2016.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY